IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANE L. SCOTT,                                    Civ. No. 03-3068-AA

       Plaintiff,                               OPINION AND ORDER

   v.

JACKSON COUNTY, a political
subdivision of the State of
Oregon, MATT MILLER, ANDY LANE,
RANDY GIRON, COLLEEN MACUK, and
MICHAEL MOTSCHENBACHER, D.V.M,

       Defendants.

_____

G. Jefferson Campbell
P.O. Box 296
Medford, OR 97501
    Attorney for plaintiff

Michael Jewett
Jackson County Counsel
10 S. Oakdale, Rm. #118A
Medford, OR  97501
    Attorney for defendants

AIKEN, Judge:

    On July 22, 2003, plaintiff filed suit alleging violations of

1   - OPINION AND ORDER

her constitutional rights under 42 U.S.C. § 1983, various state common law claims, and violation of the Oregon Property Protection Act. Plaintiff's claims arise from the seizure of over 400 rabbits from her property, and the subsequent adoption and/or euthanasia of these rabbits. Defendants move for summary judgment on grounds of qualified immunity, failure to allege the proper defendant, and failure to provide notice under the Oregon Tort Claims Act. Plaintiff, in turn, moves for partial summary judgment on several claims asserted under § 1983 and the Oregon Property Protection Act. Defendants' motion is granted.

## I. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## II. FACTS

The following facts are taken from defendants' concise statement of material facts and various documents of record.

Plaintiff lives in rural Jackson County, Oregon. In May 2001, a neighbor complained to Jackson County Animal Control officer Lane about the condition of plaintiff's rabbits. Specifically, the neighbor reported that the rabbits were screaming and dying, that she had attempted to provide them water, and that she had not seen anyone on the premises in three days.

On May 8, 2001, Lane and Animal Control officer Randy Giron investigated the complaint regarding plaintiff's rabbits. According to the Affidavit of Detective Eric Fox and Lane's deposition testimony, Lane attempted to contact plaintiff, but she was not at her residence. From his vantage point, Lane could see

several areas of stacked rabbit cages, with some covered by blue tarps.  Several rabbits were dead, and the cages were caked with feces and matted rabbit fur.  Lane and Giron estimated that they saw 300 to 500 rabbits at plaintiff's residence.  In addition to the deplorable condition of the cages, water bottles were empty or plugged up so that the rabbits were unable to drink.  Further, feces prevented the rabbits from reaching food in their feeders. Lane and Giron found bowls and filled them with water for the rabbits, began to clean out feces and old food from some of the cages, and provided the rabbits with fresh food.

On the officers noted that the cages covered with tarps were in the
direct sun from noon until sundown, even though there was an empty
covered building on the property.  Although it was early May, the
temperatures were quite high - in the 80s.  The officers spent
approximately four hours caring for the rabbits.

Lane called Animal Control Officer Matt Miller to assist in clearing out the dead rabbits and feeding and watering the rabbits. The officers noted that the cages covered with tarps were in the direct sun from noon until sundown, even though there was an empty covered building on the property.  Although it was early May, the temperatures were quite high - in the 80s.  The officers spent approximately four hours caring for the rabbits.

On May 9, 2001, Lane returned to plaintiff's property and met with plaintiff.  Lane told her of the neighbor's complaint and applicable animal neglect laws.  Lane subsequently issued plaintiff a citation for animal neglect and stated that animal control officers would continue to monitor the rabbits' conditions.

On May 10, 2001, Miller conducted a follow-up inspection at Lane's request.  At his deposition, Miller testified that the heat

was "stifling," and he wanted to make sure the rabbits had adequate water. Plaintiff was not on the premises. Miller observed that the majority of water and food containers were again empty, with some water devices outside of the cages on the ground. Miller began providing water to the rabbits and did so for approximately two hours. Giron and Lane arrived to help, and the officers observed more dead rabbits, some infested with maggots. Later Colleen Macuk, Director of the Jackson County Animal Control facility, arrived to assist, and she subsequently videotaped the rabbits. Veterinarian Michael Motschenbacker, D.V.M., also arrived and briefly examined the rabbits' conditions.

On May 11, 2001, Miller returned to the property and spoke with plaintiff, and plaintiff gave Miller permission to look around the property. According to Fox's affidavit, Miller observed plaintiff hosing down some cages, although none were clean. Miller informed plaintiff of USDA regulations regarding the proper care of rabbits and provided plaintiff with a copy. Miller asked for previous inspection reports or veterinary records, but plaintiff was unable to provide them.

On May 14, 2001, Miller returned to the property and plaintiff again gave him permission to inspect the rabbits. Several cages had been moved into the barn. However, the rabbit remained in unsanitary conditions, with cages containing piles of feces and hair and stacked on top of one another so that feces and urine

could fall through to the cages below.  Miller observed a grey rabbit with an open sore on its back and one rabbit carcass.  Water and food dispensers were in various conditions, with some containing fresh food and water and the others half-full or completely empty.

On May 16, 2001, Miller returned to the property and spoke with plaintiff.  Plaintiff gave Miller permission to inspect the rabbits.  More rabbit cages had been cleaned and moved into the barn but other remained dirty.  The food and water containers were again in various conditions.

On May 17, 2001, Miller served plaintiff with a subpoena regarding animal neglect charges filed against her.

On May 18, 2001, defendant was arraigned on an information charging animal neglect.  As a condition of her release, plaintiff was required to cooperate with Jackson County Animal Control Officers.

Subsequent to plaintiff's arraignment, Animal Control Officers inspected the rabbits numerous times through July 23, 2001.  The rabbits' conditions did not improve, with dead newborns and empty food and water containers observed by Miller on May 25; sneezing and wheezing rabbits, empty food and water bowls, and cages caked with feces on May 30; dead newborns on June 5; empty food and water containers and a rabbit with mites and open sores on its head and face on June 12; five dead adult rabbits on June 26; stifling hot

conditions, cages packed with feces, and empty food and water bowls on July 3; empty water containers, filthy cages, and hot conditions on July 5; cages and floor packed with feces and empty water containers on July 10; similar conditions on July 12 and 17; empty food containers and floor and cages matted with feces and hair on July 19; and similar conditions on July 23.

On July 31, Detective Fox prepared a sworn affidavit in support of search warrant, and on August 1, 2001, sheriff's deputies served the warrant and seized approximately half of the rabbits on the property. Lane, Miller, and Giron assisted in taking those rabbits to the Jackson County Animal Control facility.

On August 28, 2001, a hearing was held in Jackson County Circuit Court on plaintiff's motion to dismiss the charges in the information, based on the legality of the seizure and other criminal procedural matters. The judge denied the motion to dismiss and ordered plaintiff to pay $4,985.13 to the County for the cost of boarding the rabbits. An Assistant County Counsel, Debbie Minder, was present to argue the civil aspects of the hearing.

Plaintiff's later reached a plea agreement with the deputy district attorney. The parties agreed that the State would recommend forfeiture of only the rabbits that had been seized on August 1, 2001.

On October 29, 2001, plaintiff pled guilty to one count of

animal neglect.  On October 31, 2001, plaintiff was sentenced to a five-year term of probation.  After reviewing the videotape of the rabbits' conditions and noting plaintiff's lack of remorse and acceptance of responsibility, the state court judge ordered the forfeiture of all animals seized by Animal Control and all animals in plaintiff's possession.  As a condition of probation, the judge also ordered that plaintiff not possess any animals.

On November 1, 2001, animal control officers seized the additional rabbits in plaintiff's possession as a result of the forfeiture provision contained in the criminal judgment.

On November 5, 2001, plaintiff moved to amend the judgment to delete the forfeiture provision, arguing that the court exceeded its statutory authority in ordering forfeiture of the rabbits.

On November 14, 2001, plaintiff also appealed the forfeiture condition of probation to the Oregon Court of Appeals; however, she did not appeal the condition that she not possess any animals. Plaintiff also sought and obtained a temporary stay of the forfeiture from the Oregon Court of Appeals.

On November 15, 2001, the trial court judge granted plaintiff's motion, and on November 20, 2001, the judge issued an amended judgment without the forfeiture provision.  However, the amended judgment contains the condition that plaintiff not possess any animals.

Between November 1 and November 17, 2001, Animal Control

officers euthanized rabbits suffering from various afflictions, including respiratory infections, a neurological condition affecting the neck (apparently called wry or rye neck), open sores and abscesses, mites, broken or deformed legs, blindness, and very aggressive behavior. Additionally, Animal Control offered for adoption numerous other rabbits. No fee was charged for any adoption. Once Animal Control officers learned of the amended judgment containing no order of forfeiture, no further action was taken with respect to the disposition of the rabbits.

On November 30, 2001, the Oregon Court of Appeals granted plaintiff's motion to stay the forfeiture provision of the judgment. However, by that time, plaintiff had obtained the relief she sought. For reasons unknown, plaintiff filed an amended notice of appeal and did not move to dismiss her appeal until September 24, 2002.

Jackson County Animal Control continued to care for the rabbits until June 2002. Because plaintiff was prohibited from possessing animals as a condition of her probation, Animal Control could not return the rabbits to her. At the same, Animal Control could not euthanize or offer the rabbits for adoption, because there was no order of forfeiture, because no order of forfeiture existed. (However, apparently a few died from heat and some may have been euthanized due to medical problems. The records submitted are not clear on this point.) During this time, Animal

Control communicated with plaintiff regarding the care of the rabbits.

In June 2002, Animal Control deemed the rabbits "abandoned" under Jackson County Code § 612.07(g), because plaintiff had not paid any costs for the care of the rabbits incurred between November 2001 and June 2002. Ultimately, Animal Control was successful in adopting out the remaining rabbits.

### III.  DISCUSSION

#### A.  Federal Constitutional Claims

Plaintiff asserts that defendants' conduct violated her right to due process under the Fourteenth Amendment, her right against unreasonable search and seizure under the Fourth Amendment, and her right against unlawful takings without just compensation under the Fifth Amendment.

Defendant correctly argues that many of plaintiff's claims are directed at State of Oregon officials rather than Jackson County officials.  See Complaint, ¶¶ 1(b), (m), (n), (o), (p), (q) and (r).  Therefore, I do not consider these claims in support of plaintiff's allegations against the named individual County defendants.[1]

---

[1]Although plaintiff asserts § 1983 claims against Jackson County, she fails to present evidence that individual defendants acted pursuant to an unlawful policy of Jackson County to support municipal liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Oviatt v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir. 1992).  Further, plaintiff alleges no facts to support her § 1983 claims against Dr. Motschenbacher, as he is a private actor.

Defendants move for summary judgment on grounds of qualified immunity. The court must undertake a two-step approach in determining whether individual defendants Miller, Lane, Giron, and Macuk are entitled to qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). First, the court must determine whether defendants violated plaintiff's constitutional rights. <u>Id.</u> at 200-01. If the court finds at the first step that there was no constitutional violation, that ends the qualified immunity inquiry. <u>Id.</u> If, however, the court finds that the conduct did violate a constitutional right, the court proceeds to determine whether that right was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 201-02. "The *Saucier* Court therefore held that if the officer makes a mistake in applying the relevant legal doctrine, he or she is not precluded from claiming qualified immunity so long as the mistake is reasonable." <u>Kennedy v. City of Ridgefield</u>, 411 F.3d 1134, 1141-42 (9th Cir. 2005).

## 1. Due Process Claims

At the outset, I find that plaintiff fails to state a claim for substantive due process violations. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due

process,' must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted).  Here, the Fourth and Fifth Amendments provide the explicit source of protection for the seizure or taking of plaintiff's rabbits.  <u>See Fuller v. Vines</u>, 36 F.3d 65, 68 (9th Cir. 1994) (the killing of a pet dog is a destruction of property recognized as a seizure under the Fourth Amendment).  Therefore, plaintiff cannot assert a claim of substantive due process violations under the Fourteenth Amendment.

Plaintiff argues that her right to procedural due process was violated when defendants obtained the search and seizure warrant <u>ex parte</u> and without providing plaintiff notice and opportunity to be heard.[2]  Procedural due process requires that an individual be afforded notice and opportunity to be heard before deprivation of

---

[2]Notably, plaintiff asserts 21 separate claims in support of her due process allegations.  Complaint, ¶¶ 1(a)-(t).  However, I find that all but ¶¶ 1(d) and (l) fail to allege a deprivation of a property interest without notice and an opportunity to be heard.  Paragraphs 1(a), (b), (e), (g), (h), (I), (j), (k), (s) and (t) allege unlawful search or seizures under the Fourth Amendment and fail to state a claim for procedural due process.  As noted above, ¶ 1(c) asserts a Fifth Amendment violation and ¶¶ 1(b), (m), (n), (o), (p), and (r) allege criminal discovery violations or alleged improper conduct by the State in connection with her criminal proceedings.  Finally, ¶ 1(f) asserts a claim for negligence, and ¶ 1(q) a claim for defamation.  Moreover, plaintiff did not move for partial summary judgment on these claims and presented to evidence to support them in response to defendants' motion for summary judgment.  Therefore, they are dismissed.

a protected property interest.  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).  However, plaintiff provides no authority to support the rather novel argument that the seizure of property authorized by a search warrant requires pre-deprivation notice and hearing, particularly when state law authorizes issuance of the warrant.  <u>See</u> Or. Rev. Stat. § 167.345.

Regardless, when immediate action is necessary to protect the public interest, a hearing is not required prior to the exercise of police power, provided adequate post-deprivation procedural safeguards exist.  <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1318 (9th Cir. 1989).  Here, Animal Control officers determined that seizure of the rabbits on August 1, 2001 was necessary to prevent further neglect of the animals, given their conditions and plaintiff's repeated failure to provide adequate shelter, food, water, or veterinary care.  <u>See</u> Affidavit of Det. Eric Fox in Support of Search Warrant.  Plaintiff provides no evidence to contest these facts.  Moreover, there were adequate post-deprivation safeguards, because plaintiff was afforded a hearing at which she contested the legality of the seizure.  Therefore, I find no violation of plaintiff's procedural due process rights.

For the same reasons, I find that plaintiff's due process right in these circumstances was not so "clearly defined" so that defendants would have reasonably believed seizure of the rabbits was unlawful.  Or. Rev. Stat. § 167.345(2) provides:

If there is probable cause to believe that any animal is
being subjected to treatment in violation of ORS 167.315
to 167.333 or 167.340, a peace officer, after obtaining
a search warrant or in any other manner authorized by
law, may enter the premises where the animal is located
to provide the animal with food, water and emergency
medical treatment and may impound the animal. If after
reasonable effort the owner or person having custody of
the animal cannot be found and notified of the
impoundment, the notice shall be conspicuously posted on
the premises and within 72 hours after the impoundment
the notice shall be sent by certified mail to the
address, if any, where the animal was impounded.

Again, plaintiff presents no evidence to dispute the facts
that the rabbits had inadequate shelter, food and water and were
suffering from a myriad of medical ailments. Given the animals'
deplorable conditions and the issuance of the search warrant by an
impartial judicial officer, defendants reasonably believed that
their seizure of the rabbits on August 1, 2001 did not violate
plaintiff's right to procedural due process.

2. Fourth Amendment Claims

Plaintiff also claims that Animal Control officers violated
her rights against unreasonable search and seizure by their
warrantless entries onto her property from May through July of
2001, and by their seizure of the rabbits on August 1 and November
1, 2001.

First, plaintiff maintains that defendant Lane conducted an
invasive and warrantless search of the curtilage of her property on
May 8, 2001. However, plaintiff presents no evidence to support
her contention that Lane entered curtilage of her property; rather,

she relies on the allegations of her Complaint. <u>See, e.g.,</u> Plaintiff's Memorandum in Support of Cross-Motion for Partial Summary Judgment, pp. 5-7. However, at the summary judgment stage of the proceedings, plaintiff can no longer rely on mere allegations, but must set forth specific facts by affidavit or other evidence. Fed. R. Civ. P. 56(e).

It is undisputed that Lane attempted to contact plaintiff at her residence to investigate a neighbor's complaints of animal neglect, a person Lane described as "hysterical" when recounting the rabbits' conditions. Lane testified at his deposition that from the front door of plaintiff's house he could see rabbit cages covered in blue tarps and the carcasses of dead rabbits and could smell decaying carcasses.

"The emergency doctrine allows law enforcement officers to enter and secure premises without a warrant when they are responding to a perceived emergency." <u>United States v. Stafford</u>, 416 F.3d 1068, 1073 (9th Cir. 2005) (citing) <u>United States v. Cervantes</u>, 219 F.3d 882, 887 (9th Cir. 2000)). This doctrine "is based on and justified by the fact that, in addition to their role as criminal investigators and law enforcers, the police also function as community caretakers." <u>Id.</u> Three factors must be present for this exception to apply: 1) the official must have "reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of

life or property"; 2) the search must not be motivated primarily by an intent to arrest and seize evidence; and 3) "there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." Id. at 1073-74.

Here, the evidence shows that Lane had reasonable grounds to believe that the rabbits on plaintiff's property required immediate care, no evidence suggests that Lane was motivated by the intent to seize evidence, as he seized no evidence at that time and remained on the property to care for the rabbits, and Lane had ample cause to associate the rabbits' dire condition with plaintiff's property. Therefore, the emergency doctrine justifies Lane's entry on plaintiff's property on May 8, 1001, and no violation of the Fourth Amendment occurred.

Likewise, I find that the emergency doctrine applies to the entry of plaintiff's property on May 10, 2001. In his deposition, Miller testified that he attempted to contact plaintiff at her property on May 10 to check on the rabbits' conditions. Plaintiff was not at home, but Miller observed watering devices that he and others had placed in cages lying on the ground. He also saw that most of the cages did not appear to have any water, and given the high temperatures, Miller felt that he needed to act quickly.

Macuk testified that on May 10, she was unaware of whether the sheriff or district attorney had reviewed or accepted a case for animal neglect, and that she went to plaintiff's property because

of an immediate need to check on the rabbit's welfare. Macuk testified that it was her understanding that plaintiff was unable to be at the property at all times, and Animal Control wanted to check on the rabbits' conditions. Plaintiff presents no evidence to rebut this testimony.

Even if the May 8 and May 10 entries onto plaintiff's property were unlawful, I find that Miller and Macuk reasonably believed that their entry onto property to provide water and food to neglected animals was not unlawful in such circumstances.

Finally, I find that plaintiff cannot challenge defendants' entries on her property after May 10, because she presents no evidence to contest their sworn assertions that plaintiff gave them permission to inspect the rabbits on May 11, 14, 16. Further, after her arraignment on May 18, 2001, plaintiff was required to cooperate with Animal Control officers and asserts no basis to challenge the entry of her property after that date.

Plaintiff next argues that the seizure of her rabbits on August 1, 2001 and November 1, 2001 violated the Fourth Amendment. First, plaintiff argues that the seizure of the rabbits and their transport to the Jackson County Animal Control facility exceeded the limits of the applicable search warrant.

"Whether a search exceeds the scope of a search warrant is an issue [the court] determine[s] through an objective assessment of the circumstances surrounding the issuance of the warrant, the

contents of the search warrant, and the circumstances of the search." United States v. Hitchcock, 286 F.3d 1064, 1071, as amended by 298 F.3d 1021 (9th Cir. 2002).

Here, the search warrant authorized the seizure of "all rabbits and other animals that appear to be subject to neglect" and that "if [officers] find the same, or any part thereof, to seize and impound the same at that location." Affidavit of G. Jefferson Campbell re: Deposition Transcripts and Exhibits, Deposition of Matt Miller, Ex. 16. Plaintiff argues that while the search warrant allowed the seizure and impoundment of plaintiff's rabbits at her property, it did not authorize the removal of the rabbits from her property. I disagree.

As an initial matter, I find plaintiff's argument somewhat puzzling, because regardless of whether the rabbits remained on the property or were taken to a county facility, the warrant authorized their "seizure" and "impoundment," and plaintiff would not have had lawful access to them had they remained on her property. Regardless, the circumstances of surrounding the issuance of the warrant do not support plaintiff's interpretation. From May 8, 2001 through July 23, 2001, the rabbits had remained on the property while Animal Control officers checked on the rabbits and provided them with food and water when plaintiff failed to do so. It makes little sense that the search warrant would authorize impoundment of the animals at plaintiff's property given this

history. Moreover, I do not find that the language of the search warrant prohibits the removal of the rabbits from plaintiff's property when read as a whole. Rather, the search warrant could be interpreted to mean that if animals are suffering from neglect are found on plaintiff's property, seizure of the "same" animals at that location is authorized. Therefore, I do not find that the removal of the rabbits exceeded the scope of the search warrant.

Even if the removal of the rabbits could constitute a violation of the Fourth Amendment, I find that defendants are entitled to qualified immunity, because they reasonably believed that the warrant authorized the seizure and removal of the rabbits. Detective Fox testified at his deposition that he understood the language "at that location" contained in the search warrant to mean the property at which the animals were located and from which the animals were to be seized; he did not understand such language to mean that the animals must remain at plaintiff's property once impounded. Furthermore, all named defendants in this action were not directly involved with obtaining the search warrant and all believed that the search warrant authorized the seizure and removal of the rabbits from plaintiffs' property.

Second, plaintiff claims that the seizure of the remaining rabbits on November 1, 2001 was unlawful, because the forfeiture provision of plaintiff's judgment of conviction was void. I find plaintiff's argument without merit.

It is undisputed that plaintiff did not object to the trial judge's forfeiture ruling when imposed at her sentencing on October 31, 2001.  Thus, at the time defendants seized the remaining rabbits, the judgment remained in full force and effect, and the seizure was lawful.

Although the forfeiture provision was subsequently deleted, plaintiff could not regain possession of the rabbits as a condition of her probation.  Plaintiff fails to explain what, exactly, Animal Control should have done with the rabbits.  Regardless, given that plaintiff did not object to the forfeiture provision, defendants are entitled to qualified immunity, because they reasonably believed their actions on November 1, 2001 were lawful under the judgment of conviction.

### 3.  Fifth Amendment Claim

Next, plaintiff alleges that the euthanasia and adoption of her rabbits in November 2001 constitutes an unlawful taking of her property without just compensation.  However, the rabbits were placed or destroyed at that time as condition of forfeiture in a criminal judgment.  See Eversleigh v. United States, 24 Cl. Ct. 357, 359 (Cl. Ct. 1991) (invalid forfeiture cannot be the foundation for a Fifth Amendment taking claim).  Further, although Animal Control officers adopted out or euthanized some rabbits between November 1 and November 17, an amended judgment deleting the forfeiture provision was not issued until November 20, 2001.

Plaintiff presents no evidence that Animal Control disposed of any rabbits after it obtained notice of the amended judgment or temporary stay of the forfeiture provision issued by the Oregon Court of Appeals.

Further, I do not find that the subsequent adoption and/or euthanasia of the rabbits in June 2002 constitutes a "taking." After plaintiff's criminal judgment was amended to delete the forfeiture provisions, plaintiff failed to take action to provide another caretaker or alternative arrangements for the rabbits, either by selling or giving the rabbits away. Notably, plaintiff did not appeal the probation condition that she not possess any animals. Therefore, the County could not lawfully return the rabbits to plaintiff. After six months in limbo, Animal Control invoked Jackson County Code § 612.07(g) and deemed the animals abandoned.

Section 612.07(g) provides:

Any failure or refusal to pay fees, penalties, or costs as provided for in this Chapter after 10 days from the date notice is posted at the Animal Shelter, is deemed abandonment of the impounded animal and the Animal Shelter shall retain the right to dispose of the animal as considered by the Director to be in the best interest of Jackson County.

Plaintiff presents no evidence that she paid for costs incurred after November 1, 2001. Therefore, I find no "taking" of plaintiff's property without just compensation.

It is true that the adoption of rabbits in June 2002 arguably

violated the stay of the forfeiture provision issued by the Oregon Court of Appeals on November 30, 2001, because it was intended to prevent the placement or destruction of the rabbits pursuant to the forfeiture provision. However, the forfeiture provision had long been deleted and it is arguable that the stay was moot. Furthermore, the rabbits were not offered for adoption under the authority of the forfeiture provision; rather, Animal Control relied on § 612.07(g) of the Jackson County Code.

Regardless, if plaintiff believed that the stay had been violated, she could have raised it with the Court of Appeals as her appeal was still pending at that time. She did not and subsequently dismissed her appeal.

B.  State Law Claims

Plaintiff alleges state law tort claims of trespass to real property, trespass to chattel, and conversion. Defendants argue that plaintiff failed to provide the requisite notice under the Oregon Tort Claims Act (OTCA). Or. Rev. Stat. § 30.275. I agree.

The OTCA provides that no action may be brought against an officer, agent, or employee of a public body unless notice of the claim is given within 180 days of the alleged loss or injury. Id. § 30.275(1) and (2)(b). Notice may be "formal" or actual." Id. § 30.275(3)(a), (b). "Formal notice" is a written communication. Id. § 30.275(4). Here, plaintiff does not allege and no evidence suggests that plaintiff provided formal notice of her intention to

file state law tort claims.

Therefore, plaintiff must rely on "actual notice" which is:

[A]ny communication by which any individual to whom notice may be given as provided in subsection (5) of this section or any person responsible for administering tort claims on behalf of the public body acquires actual knowledge of the time, place, and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body.

Id. § 30.275(6).

Plaintiff's only communication regarding a potential claim against Jackson County was a cryptic comment made by plaintiff's criminal defense attorney in a hearing regarding the criminal charges and costs for care of the rabbits. According to the transcript provided (the date of which is apparently August 28, 2001), plaintiff's attorney stated: "Your Honor there – there is one thing that – that [plaintiff] – and she has a civil attorney that wanted me to do – advise the County that they probably will be proceeding on a tort claim against the County for some of the Constitutional things that were presented here." Affidavit of G. Jefferson Campbell re: Circuit Court Hearing Transcripts (doc. 74), Exhibit 1, p. 37.

However, the communication did not provide any indication that plaintiff intended to raise state law tort claims; rather, plaintiff's attorney mentioned Constitutional issues raised at that hearing involving the validity of the search warrant and its

execution.  Therefore, plaintiff failed to provide notice to the County of her state law tort claims, and they are dismissed.

Finally, plaintiff alleges violations of the Oregon Property Protection Act (OPPA), set forth in Art. XV, § 10 of the Oregon Constitution.  The OPPA provides, in relevant part that:

> No judgment of forfeiture of property in a civil forfeiture proceeding by the State or any of its political subdivisions shall be allowed or entered until and unless the owner of the property is convicted of a crime in Oregon or another jurisdiction and the property is found by clear and convincing evidence to have been instrumental in committing or facilitating the crime or to be proceeds of that crime.  The value of the property forfeited under the provisions of this subsection shall not be excessive and shall be substantially proportional to the specific conduct for which the owner of the property has been convicted. . . . Nothing in this section shall prohibit a person from voluntarily giving a judgment of forfeiture.

Or. Const., Art. XV, sec. 10(3).

Notably, the OPPA was ruled unconstitutional by the Oregon Court of Appeals in 2003.  See Lincoln Interagency Narcotics Team (LINT) v. Kitzhaber, 188 Or. App. 526, 553-54, 72 P.3d 967 (2003). Although the Oregon Supreme Court granted review of this decision in 2004, Lincoln Interagency Narcotics Team v. Kitzhaber, 336 Or. 376, 84 P.3d 1080 (2004), no ruling has been issued and the parties provided no information as to the status of the case.  Thus, as it stands, the OPPA is invalid and cannot support plaintiff's claim.

Regardless, the undisputed facts contradict plaintiff's argument that the rabbits were adopted out or destroyed pursuant to an order of forfeiture in violation of the OPPA.  Although

plaintiff's original judgment of conviction included the forfeiture of all animals in the care of Jackson County and all animals in plaintiff's possession, the judgment subsequently was amended to delete these provisions.

However, plaintiff did not contest or appeal the condition that she not possess any animals; thus, Jackson County could not return the rabbits to plaintiff, and the County continued to care for the rabbits until the following June. At that time, the weather began to turn warm, and several rabbits apparently died as a result of the heat. According to defendants, plaintiff had not paid for the care of the rabbits from November 20, 2001 through June 2002, so they deemed the rabbits "abandoned" pursuant to Jackson County Code § 612.07(g). Thus, plaintiff's rabbits remained unavailable to her as a result of her probation conditions and her abandonment of the rabbits rather than an allegedly unlawful forfeiture order.

///

///

///

///

///

///

///

///

<u>Conclusion</u>

For the reasons explained above, defendants' Motion for Summary Judgment (doc. 54) is GRANTED, and plaintiff's Motion for Partial Summary Judgment (doc. 78) is DENIED. This case is DISMISSED.

IT IS SO ORDERED.

Dated this __6__ day of December, 2005.


_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge